Caruthers, J.,
delivered the opinion of the Court.
It very clearly appears from the proof in this case, that .a partnership existed between these parties in the practice of medicine, in 1856,. There is no doubt either as to the terms. They were to be at equal expense in carrying on the business; that is, for medicines, including the stock Johnson then had, and shop rent; and Murray was to have one-third of the profits. The parties disagreed and separated, and this bill is filed to settle up ■the partnership.
The defendant seeks to resist the bill upon the ground, that Murray was to pay him for one-half of the stock *355 of medicines on band at tbe time and attend actively to the business, in both which stipulations he utterly failed, and for that reason he is not entitled to claim as a partner. In fact he denies that the .partnership contract was ever complete, as the conditions were not performed. Upon these issues of fact much proof was taken, and we are satisfied that the Chancellor was right in deciding that the existence of the partnership was established, and ordering an account. It is true that Murray did not pay for one-half the medicine on hand, but that would not annul the contract, as it was not a condition precedent. It may be true, also, that he did not devote himself to the practice and give attention to business as he should have done; but we are not aware of any principle that authorizes an inquiry into the inequality of services by the members of a partnership, without express stipulations to that effect.
But there is a question of practice, of some importance, presented in this case which it is proper to notice. The complainant was permitted to discredit the defendant by impeaching his general character, as in the case of a witness. The argument is, that when the answer is responsive to the charges or interrogatories in the bill, he is made a witness by complainant, and his statements are to be regarded as true, unless disproved by two witnesses, or one with circumstances; and, therefore, he should be subject to impeachment in all the modes applicable to witnesses proper. It is insisted that the weight to be given to his answer depends on the strength of his character. But that is not so. The rule is based upon the consideration, that the complainant had called upon him to answer as to certain facts, and thereby *356 puts him in the place of a witness to that extent. Having thus forced him into the position he occupies, and compelled him to answer on oath to the limited extent he chooses to prescribe, it is but reasonable that he should be bound by the responses he has extracted, unless he can disprove them. He may weaken them by circumstances intrinsic or extrinsic, but he cannot be allowed to discredit by attacking the general character. He could not do this as to a witness called by himself, much less a party made by his bill. It is easy to see how such a practice could be abused by turning every contest for rights into a war upon character. Such a prac tice would be intolerable, and is not sustained by either reason or authority.
It would not have been thought necessary to notice this question, but for the fact that we are informed that it is tolerated in some sections of the country.
A complainant may, now, by virtue of a late statute, if he wishes to avoid the effect of the rule in favor of the answer, excuse the defendant from answering upon oath; in which case, the denials, only have the effect to form an issue to be decided by the weight of evidence.
The case will be remanded for the account ordered by the Chancellor. The defendant will pay the cost of this Court, but the cost of the depositions upon character will be paid by the complainant. The other cost below will be disposed of by the Chancellor on the final disposition of the cause.